Private Citizen Ronald L. Holt
c/o 2241 East Kathleen Road
Phoenix, Arizona 85022
Plaintiff *In Propria Persona*

Private Citizen Lyssa Royal Holt
c/o 2241 East Kathleen Road
Phoenix, Arizona 85022
Plaintiff *In Propria Persona*
Judiciary Act of 1789 § 35

# district court of the United States[1]
# District of Columbia

| | |
|---|---|
| Private Citizen Ronald L. Holt; and, Private Citizen Lyssa Royal Holt | Case Nº: 1:05-cv-1692-RMU |
| Plaintiffs, v. | |
| CYNTHIA DAVIDSON; MARK CARNICLE; ELIZABETH MARRIAGA; INTERNAL REVENUE SERVICE; and, UNITED STATES OF AMERICA | |
| Defendants. | |

PLAINTIFFS' SUR-REPLY TO DEFENDANT'S
REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs hereby file this sur reply to respond to certain omissions and misrepresentations by counsel in defendant's reply in support of motion for judgment on the pleadings:

1. Plaintiffs responded to the issues raised by counsel in defendant's motion for judgment on the pleadings. Plaintiffs did not, as counsel "presumes", agree that the court lacks personal jurisdiction over the individual defendants. Notwithstanding counsel's creative arguments regarding personal jurisdiction in respect of IRC 7433,

---

[1] As designated in Title 26, United States Code, § 7433.

1

or even the agreement of the Court in that regard, Plaintiffs contend that the Court has personal jurisdiction in respect of the Administrative Procedure Act allegations. The Court will note that counsel's reply in support fails to counter Plaintiffs' assertions of alternative bases for jurisdiction.[2]

2. Counsel once again admits in her reply in support of motion for judgment on the pleadings the two issues she acknowledged in the motion: 1) failure to notify; and 2) failure to disclose Plaintiffs' records to Plaintiffs. Counsel admits, in her reply in support, the allegations regarding intentional retaliation, Complaint, ¶ VI, and intent to defeat provisions of the Internal Revenue Code.

3. Regardless of counsel's assertions regarding whether the alleged acts are actionable under 7433, these acts, asserted as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law, are without doubt actionable under the APA.

4. As to counsel's regurgitated assertions with respect to exhaustion of remedies:

   a. Counsel's reply in support relies almost entirely upon Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837. While counsel correctly recognizes Chevron as the standard by which the issue of regulatory invalidity is to be determined, counsel found it necessary to misrepresent Chevron to the Court.

   b. The Chevron court set the standard:

---

[2] Plaintiffs presume counsel agrees with the APA as an alternative bases for jurisdiction.

1

"(a) With regard to judicial review of an agency's construction of the statute which it administers, if Congress has not directly spoken to the precise question at issue, the question for the court is whether the [p838] agency's answer is based on a permissible construction of the statute. Chevron, Pp. 842-845."

c. Counsel's misrepresentation of Chevron, Reply, p. 4, "…whether the regulations carries out the congressional mandate in a reasonable manner…" fails to justify the regulation as a *permissible* interpretation. Chevron, p. 843. In elaborating, the Chevron court quoted Morton v. Ruiz, 415 U.S. 199, immediately thereafter. The Court will note that Morton v. Ruiz was cited by Plaintiffs in the Response to Motion for Judgment on the Pleadings, and counsel failed to address its holding.

d. The regulation is unreasonable in that it requires a Citizen injured by a reckless, intentional, or negligent disregard of law or regulation to wait up to six months for the agency responsible for inflicting the injury to decide whether to address the injury. This half-year waiting period, viewed in the context of federal record-keeping law, is extreme.

5. The Federal Records Act, Public Law 90-620; 44 USC § 3101, et seq., and GSA regulations implementing the Act, require IRS, as a federal agency, to "make and preserve a record containing adequate and proper documentation of ... essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities". 44 USC § 3101 (emphasis added); 36 CFR § 1222.38.

a. Agency recordkeeping requirements must prescribe an appropriate records maintenance program so that complete records are filed, and records can be found

   when needed, 36 CFR 1222.50(a), and "(1) Establish and implement standards and procedures for classifying, indexing, and filing records as set forth in GSA and NARA handbooks; (2) Formally specify official file locations and prohibit the maintenance of records at unauthorized locations;" <u>36 CFR 1222.50(b)(1),(2)</u> (emphasis added).

  b. In the context of the Federal Records Act, record-keeping regulations; and in the context of the basis for which IRC § 7433 was created, the six-month waiting period in the regulation is tantamount to a complete frustration of Congress' intent.

6. Counsel's subsequent citation of National Muffler Deals Assn., Inc. v. United States, 440 U.S. 472, is equally misrepresentative. The regulatory interpretation of the ambiguous statutory term "business league" as it relates to tax exemption should and must be distinguished from the regulatory obstruction of statutory protection of rights to due process.

7. Counsel lastly misrepresents 7433's current language. Congress proscribed a damages award absent the Court's own satisfaction with respect to administrative exhaustion — without reinstating TBOR I's express proscription.

**RECOGNIZED EXCEPTION TO EXHAUSTION REQUIREMENT**

8. Lastly, notwithstanding counsel's admirable creativity, the Court of Appeals for the District of Columbia has recognized that an exception to the requirement of exhaustion of the administrative remedy is found where "An adverse decision can also be certain if an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider." <u>Randolph-Sheppard Vendors</u>

1

of Am. v. Weinberger, 795 F.2d 90, 105 (D.C. Cir. 1986) (citing Etelson v. Office of Pers. Mgmt., 684 F.2d 918, 925 (D.C. Cir. 1982).

9. IRS "has articulated a very clear position" on the issue of regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, states:

> "(1) Returning money wrongfully collected: This Policy Statement has been revoked."

10. There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position; the Policy has been revoked.

11. IRS "has articulated a very clear position" on the issue of producing records of agency activity, i.e., federal records, available to Plaintiff(s) as a matter of federal records law, federal records access law, and federal privacy law, which, presumably would support defendants' position that a duty imposed upon Plaintiff(s) has/have gone unheeded.

12. There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position than by IRS' repeated failure, and by counsel's failure, to provide Plaintiff(s) and the Court with records of procedurally proper actions, including but not limited to, production of properly executed certificates of assessment.

13. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

14. The Court is well aware of the History of IRC section 7433 from Plaintiff(s) Response to Order to Show Cause, and Plaintiff(s) will not tax the Court's patience in

repeating that history. Plaintiff(s) will respectfully re-direct the Court's attention to what the Bar had to say about 7433's re-amendment in 1998:

> "Congress should not have re-imposed the exhaustion provision. Many plaintiffs bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. These plaintiffs should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

15. The Bar's recognition that "few pro se plaintiffs have actual notice of the process" is but one of many reasons the Court should find the exception to exhaustion appropriate. "[F]ew pro se plaintiffs have actual notice," because IRS refuses to give it.

16. IRS, by its absolute failure to notify Citizens, in a publicly available document, of the right to pursue damages under section 7433, "has articulated a very clear position" on the issue of suits for damages. IRS intends that as few people as possible pursue damages under 7433. There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position than by IRS effectively "hiding" of 7433's existence, notwithstanding that Service Policy P-5-2(3) purports a "commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998".

17. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

FURTHER DISREGARD OF SERVICE POLICIES (Clear articulation / demonstration)

18. By disregarding Service Policy P-1-1, IRS "has articulated a very clear position on" the Mission of the Service:

(1) Mission of the Service: Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.

IRM 1.2.1.2.11

There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position than by IRS' ongoing failure to comply with Service Policy P-1-1, and fulfill the Mission of the Service, by helping Citizens understand and meet their tax responsibilities.

19. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

20. By disregarding Service Policy P-5-2, IRS "has articulated a very clear position" on:

(1) COLLECTING PRINCIPLES: All our decisions about collecting must be guided by these principles. To the extent that they are, we will succeed in our mission.
(2) SERVICE AND ASSISTANCE-All taxpayers are entitled to courteous, responsive, and effective service and assistance in all their dealings with the Service. We will actively assist taxpayers who try to comply with the law, and work to continually improve the quality of our systems and service to meet the needs of our customes. All taxpayers, whether delinquent or fully compliant, are entitled to prompt and professional service whenever they deal with Service employees.
(3) TAXPAYER RIGHTS-We will observe taxpayers' rights, including their rights to privacy and to fair and courteous treatment. This affirms our commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998. Taxpayers will be protected from unauthorized disclosure of information.
(4) COMPLIANCE-The public trust requires us to ensure that all taxpayers promptly file their returns and pay the proper amount of tax, regardless of the amount owed: The public as a whole is our customer, not just delinquent taxpayers. Our customers expect us to promote voluntary compliance by ensuring that all promptly pay their fair share. Employees should work with taxpayers to meet all their filing and paying requirements, not only the delinquency at hand. This involves identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers

(individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.
(5) CASE RESOLUTION-While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed: All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

1.2.1.5.2

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' ongoing failure to comply with Service Policy P-5-2.

21. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

22. By disregarding Service Policy P-5-16, ,IRS "has articulated a very clear position" on the issue of forebearance:

(1) Forbearance when reasonable doubt exists that assessment is correct: Whenever a taxpayer raises a question or presents information creating reasonable doubt as to the correctness or validity of an assessment, reasonable forbearance will be exercised with respect to collection provided (1) adjustment of the taxpayer's claim is within control of the Service, and (2) the interests of the Government will not be jeopardized.

IRM 1.2.1.5.3

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than its repeated failure to exercise reasonable forbearance in compliance with with Service Policy P-5-16, despite its apparent inability to produce procedurally proper certificates of

assessment, as mandated in the Internal Revenue Code, and federal records law, federal records access law, and federal privacy law.

23. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

24. By disregarding Service Policy P-5-34, IRS "has articulated a very clear position" on the issue of enforced collection:

> Collection enforced through seizure and sale of the assets occurs only after thorough consideration of all factors and of alternative collection methods: The facts of a case and alternative collection methods must be thoroughly considered before determining seizure of personal or business assets is appropriate. Taxpayer rights must be respected. The taxpayer's plan to resolve past due taxes while staying current with all future taxes will be considered. Opposing considerations must be carefully weighed, and the official responsible for making the decision to seize must be satisfied that other efforts have been made to collect the delinquent taxes without seizing. Alternatives to seizure and sale action may include an installment agreement, offer in compromise, notice of levy, or lien foreclosure. Seizure action is usually the last option in the collection process.
> (2) All seizures will be approved by the Chief, Collection Division, with other specific seizures also requiring District Director, Assistant District Director, or Counsel approval, or court order.
>                                                                                                  1.2.1.5.7

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" enforced collection than by IRS' failure to comply with Service Policy P-5-34(2) in having all seizures approved, and failure to produce evidence of same upon lawful request.

25. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

26. By disregarding Service Policy P-5-47, IRS "has articulated a very clear position" on the issue of liens and levies:

> (1) Notices of lien generally filed only after taxpayer is contacted in person, by telephone or by notice: *** All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.

1

(2) *****.
(3) Other notice of lien filing requirements: A notice of lien must be filed: 1. prior to instituting levy action on property in possession of the taxpayer; and 2. prior to service of final demand for payment if there is reasonable probability that suit may later be instituted.

IRM 1.2.1.5.13

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-5-47 by instituting levies prior to lien, and failure to produce evidence of same upon lawful request..

27. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

28. By disregarding Service Policy P-6-20, IRS "has articulated a very clear position" on providing information on the application of the tax law:

   (1) Information provided taxpayers on the application of the tax law: The Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.
   (2) Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and taxpayer publications.

IRM 1.2.1.6.7

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-6-20(1) in making available "comprehensive, accurate, and timely information on the requirements of tax law and regulations".

29. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

30. By disregarding Service Policy P-6-21, IRS "has articulated a very clear position" on the issue of instructing groups of taxpayers or prospective taxpayers on their rights and responsibilities under the tax law:

> (1) Educational programs provided: The Service will conduct taxpayer education programs for taxpayers whose needs for tax information are most effectively met by these means.
> (2) These educational programs will include those established to assist individuals in meeting their current and future tax obligations, as well as programs designed to instruct groups of taxpayers or prospective taxpayers on their rights and responsibilities under the tax law or on specific tax provisions of common interest.
>
> 1.2.1.6.8

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-6-21 by conducting taxpayer education programs designed to instruct groups of taxpayers or prospective taxpayers on their rights and responsibilities.

31. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

32. By disregarding Service Policy P-10-42 , IRS "has articulated a very clear position" on the issue of complaints or allegations of misconduct or irregularities concerning Service officials or employees:

> (1) All bona fide complaints or allegations will be investigated: An investigation will be made of all bona fide complaints or allegations of misconduct or irregularities concerning Service officials or employees and in certain instances investigations may be made of non-Service personnel when their actions may affect the integrity of the Service.
>
> IRM 1.2.1.10.4

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-10-42, in investigating complaints or allegations of misconduct or irregularities.

EXHAUSTION / AVAILABLITY OF REMEDY

l

33. With Title 26 of the Code of Federal Regulations as evidence, it is apparent that IRS "has articulated a very clear position" on the issue of suits for damages, which it has "demonstrated it would be unwilling to reconsider" by failing to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

34. In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS "articulated a very clear position" on this issue, "demonstrat[ing] it would be unwilling to reconsider" by failing to amend the regulation to reflect Congress' TBOR II intent at all.

35. It appears that IRS "[re-]articulated a very clear position" on the suits for damages issue, "demonstrat[ing] it would be unwilling to reconsider" by its failure to prescribe the administrative procedure necessary to give effect to section 7433, as amended, until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's administrative exhaustion requirement.   IRS intends not to be sued.

36. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

THE REGULATION IS AN UNREASONABLE INTERPRETATION

l

37. IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by requiring that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit. This half-year waiting period, viewed in the context of federal record-keeping law, is extreme.

38. The Federal Records Act, Public Law 90-620; 44 USC § 3101, et seq., requires IRS, as a federal agency, to "make and preserve a record containing adequate and proper documentation of ... essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities". 44 USC § 3101 (emphasis added); 36 CFR § 1222.38.

39. Agency recordkeeping requirements must prescribe an appropriate records maintenance program so that complete records are filed, and records can be found when needed, 36 CFR 1222.50(a), and "(1) Establish and implement standards and procedures for classifying, indexing, and filing records as set forth in GSA and NARA handbooks; (2) Formally specify official file locations and prohibit the maintenance of records at unauthorized locations; 36 CFR 1222.50(b)(1),(2) (emphasis added).

40. In the context of the Federal Records Act, and the GSA regulations implementing same, and of the basis for which IRC § 7433 was created, the six-month waiting period in the regulation is tantamount to a complete frustration of Congress' intent. Few Citizens, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate. SEE: excerpts from

NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, in Plaintiffs' Response to Motion for Judgment on the Pleadings.

41. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

## THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

42. In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: Reiter v Sonotone Corp., 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. Richards v United States, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, Consumer Product Safety Comm'n v GTE Sylvania, Inc., 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. Fuller v. United States, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

43. 7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies, shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention, have been exhausted.

44. IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by converting 7433's "...no damages may be awarded..." language into "...no suit may be maintained..." in the regulation.

45. IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by using the language that Congress expressly

1

removed from 7433 in TBOR II, and omitted from the TBOR III re-amendment restricting award of judgment.

46. Based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate.

SUMMARY

The right to file a civil suit for damages was intended to protect taxpayers from an out of control agency. The administrative remedies provision was intended to facilitate that right. Paraphrasing Pacific Tel. & Tel. Co. v. Public Util. Comm'n, 443 U.S. 1301 (1979):

Here, as in Pacific Tel. & Tel. Co. v. Public Util. Comm'n, above, the administrative action [the regulation] is the source of the claimed wrong, not a possible avenue for its redress.

IRS has clearly articulated its positions. IRS has demonstrated its unwillingness to reconsider its positions.

Counsel has admitted the allegations regarding defendants' disregard of statutes and regulations. Counsel has admitted the APA judicial review jurisdiction of the Court.

WHEREFORE, based upon the foregoing, the Court should reconsider, and find the Randolph exception appropriate. The Court should deny the Motion for Judgment on the Pleadings, and set the case for trial.

Respectfully entered this 22nd day of June, 2006.

_____
Ronald L. Holt

_____
Lyssa Royal Holt

Copies mailed this 22 day of June, 2006 to:

Jennifer L. Vozne
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, District of Columbia 20044

RA 511 832 895 US

_____
Ronald L. Holt